```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
ROY TAYLOR,                                                  :
                              Plaintiff,                     :
                                                             :       10 Civ. 3819 (JPO)
              -against-                                      :
                                                             :       MEMORANDUM
STATE OF NEW YORK DEPT. OF                                   :       AND ORDER
CORRECTIONS; CORRECTIONAL OFFICER                            :
LAWRENCE; CORRECTIONS OFFICER C.                             :
GAMMONE,                                                     :
                              Defendants.                    :
------------------------------------------------------------ X
```

J. PAUL OETKEN, District Judge:

This action chiefly concerns an alleged use of excessive force against an inmate at Downstate Correctional Facility ("Downstate"). Plaintiff Roy Taylor filed his original complaint in this action on May 10, 2010. (Dkt. No. 2.) An amended complaint followed on December 9, 2010. (Dkt. No. 12.) In a letter to the Court dated November 17, 2011, Plaintiff withdrew all of his claims but two.[1] (*See* Dkt. No. 42.) The two remaining claims are (1) a claim alleging that Defendants violated Plaintiff's Eighth Amendment right to be free from "cruel and unusual punishments," and (2) a claim alleging that Plaintiff was denied the due process of law guaranteed to him by the Fourteenth Amendment of the United States Constitution when he was placed in punitive segregation for roughly eleven days following the incident discussed below.

On December 28, 2011, Defendants Correction Officer (now Sergeant) David Lawrence and Correction Officer Christopher Gammone (together, "Defendants"), employees of the New York State Department of Corrections and Community Supervision ("DOCCS"), filed the instant motion for summary judgment as to Plaintiff's remaining claims. (Dkt. No. 31.) In responding

---

[1] The withdrawn claims were (1) against the State of New York and its Department of Corrections (now the Department of Corrections and Community Supervision); (2) state law claims against defendant Correction Officers Lawrence and Gammone; and (3) claims for deliberate indifference to Plaintiff's medical needs. (*See* Dkt. No. 42.)

1

to Defendants' motion, Plaintiff has honorably conceded that his Fourteenth Amendment claim cannot be sustained under applicable law.  (*See* Def.'s Br., Dkt. No. 37, at 2.)  For the reasons discussed below, Defendants' motion for summary judgment will be granted as to that Fourteenth Amendment claim and also as to Plaintiff's Eighth Amendment claim.

**I.      Background**

The parties agree that, on April 20, 2009, Plaintiff was transferred from incarceration at Rikers Island Correctional Facility to Downstate Correctional Facility ("Downstate"), which is administered by DOCCS.  (Defendants' Statement Pursuant to Local Civil Rule 56.1, Dkt. No. 35 ("Def.'s 56.1 Statement"), ¶ 1; Plaintiff's Opposition Statement Pursuant to Local Rule 56.1(b), Dkt. No. 39 ("Pl.'s 56.1 Statement"), ¶ 1.)  Upon arrival at Downstate, Plaintiff was led into a draft area.  (Def.'s 56.1 Statement ¶ 1; Pl.'s 56.1 Statement ¶ 1.)  Plaintiff was, at that time, wearing a medically prescribed boot on his left foot because he had had surgery to remove a cyst from that foot at Bellevue Hospital on February 12, 2009.  (Deposition of Roy Taylor Transcript ("Tr."), annexed as Ex. A to the Declaration of Donald Nowve, dated December 28, 2011, ("Nowve Decl."), Dkt. No. 32 at 35-37, 42-52; Bellevue Hospital Center medical report, Nowve Decl., Dkt. No. 32-2, Ex. B at 3 of 9.)

Plaintiff and other inmates in the draft area were directed to remove their shoes and were searched by DOCCS staff.  (Tr. at 58-62.)  Plaintiff has testified that he handed his medical boot to Correction Officer Lawrence for inspection and that, when Lawrence "tossed it back," Plaintiff "slipped it on."  (*Id.* at 64.)  Plaintiff asserts that "[i]t was at that time that [Lawrence] slammed me against the wall, but he never gave me no instructions to do nothing."  (*Id.*)  According to Plaintiff, Lawrence "said I ain't tell you to move.  But he didn't tell me not to put my shoe on.  There was no direction.  I think that was the problem, lack of communication."  (*Id.*

2

at 65.)  When asked what part of his body "came in contact with the wall," Plaintiff testified "[i]t was like the face, you know, and that sort of thing." (*Id.* at 67.)

Plaintiff has testified that Lawrence then told him, "You don't move until I tell you to. Do you hear me?  Do you hear me?" (*Id.* at 68.)  Plaintiff states that,

> [b]ecause I didn't respond, they snatched me up and, you know, drug me to a cell and my boot came off.  They had no regard for that, you know.  And I was hobbling and I was hobbling enough where I fell . . . and reaggravated my foot.  I was having a little pain after that, you know."

(*Id.*)  The amended complaint alleges that Plaintiff was "pushed, pulled and yanked" by "Lawrence and another corrections officer, believed to be C. Gammone . . . ." (Dkt. No. 12 at 4.) However, no evidence presented to the Court names or implicates Defendant Gammone in the events discussed herein.

Plaintiff testified that he was taken from the draft area to a cell where he was held for twenty or twenty-five minutes, though he also testified that he does not know the length of time exactly. (Tr. at 81.)  At the end of that time, he was taken from the cell to Downstate's medical facility. (*Id.* at 82.)  Plaintiff testified that he was able to walk to the medical facility with only "slight pain" in his foot because, while sitting in the holding cell, "the pain [had] subsided." (*Id.* at 83.)  Plaintiff was asked as his deposition, "Other than the foot pain, any other pain?" (*Id.*) Plaintiff answered, "I think my back was bothering me, too." (*Id.*)  The prison's medical records state, "inmate denies any injuries." (Ambulatory Health Record Progress Note, Nowve Decl., Dkt. No. 32-2, Ex. B at 2 of 9.)  Plaintiff has testified that those medical records were falsified and that, in fact, "I said I'm having pain." (Tr. at 86.)  There is no evidence of any injury or lasting pain resulting specifically from the alleged slamming of Plaintiff's head against the wall.

"[D]ays later," Plaintiff returned to the medical facility where he "explained [his] chief complaint, back pain and foot pain." (*Id.* at 87-89.)  The doctor who saw Plaintiff on this visit

3

prescribed him Motrin; recommended bed rest "for, [Plaintiff] think[s], about a month"; and continued Plaintiff's wearing of a medical boot. (*Id.* at 88.)

Defendant Lawrence issued an inmate misbehavior report concerning the incident in the draft area. The report stated in part that, after Lawrence had searched Plaintiff's footwear,

> Inmate Taylor . . . took his hands off the wall and bent over reaching towards the floor. I [Lawrence] ordered Inmate to place his hands back the wall [*sic*]. Inmate Taylor started to argue in a loud voice and turn toward me. I grabbed Inmate Taylor's right arm with both of my hands and tried to turn him towards the wall, while giving him orders to place his hands on the wall.

(Inmate Misbehavior Report, Nowve Decl., Ex. B, Dkt. No. 32-2 at 6 of 9.) Lawrence's report adds that "pieces of paper with phone numbers and a lawyer's card" were found in Plaintiff's boot and confiscated. (*Id.*) Plaintiff admits that these items were found hidden in his boot. (*See* Tr. at 69-70.)

Plaintiff was held in Downstate's Special Housing Unit ("SHU") from April 20, 2009 until the disciplinary charges against him were dismissed eleven days later on May 1, 2009 at the conclusion of a disciplinary hearing. (*See* disciplinary hearing records, Nowve Decl., Dkt. No. 32-2, Ex. B at 7-9 of 9.)

**II.     Legal Standards**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal quotation marks and citation omitted). "A fact is 'material' when it might affect the outcome of the suit under governing law," and "[a]n issue of fact is 'genuine' if the evidence is

4

such that a reasonable jury could return a verdict for the nonmoving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks and citation omitted).

When determining whether a genuine dispute of material fact exists, a court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *See Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010).

## III.   Discussion

### A.   Plaintiff's Fourteenth Amendment Claim

To establish a due process claim with respect to a prison disciplinary proceeding, "a plaintiff must establish (1) possession of a liberty interest and (2) deprivation by defendants of that interest as a result of insufficient process." *Dawkins v. Gonyea*, 646 F. Supp. 2d 594, 605 (S.D.N.Y. 2009). A prisoner can establish a due process claim in connection with prison disciplinary proceedings resulting in segregative confinement or loss of privileges only by demonstrating that the sanctions "impose[d] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Connor*, 515 U.S. 472, 484 (1995). "Generally, periods of confinement in SHU lasting fewer than 101 days have been found not to amount to atypical and significant hardship." *Dawkins*, 646 F. Supp. 2d at 606 (citation omitted).

Here, there is no evidence that Plaintiff suffered sanctions that imposed "atypical and significant hardship" on him during the eleven days he was confined to the SHU. Plaintiff concedes as much. (*See* Def.'s Br., Dkt. No. 37, at 2.) Accordingly, Defendants' motion for summary judgment will be granted as to Plaintiff's Fourteenth Amendment claim.

### B.       Plaintiff's Eighth Amendment Claim

The Eighth Amendment to the U.S. Constitution provides that "cruel and unusual punishments [shall not be] inflicted." U.S. Const. amend. VIII. That rule, applicable to the states through the Fourteenth Amendment, *see Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976), is violated by unnecessary and wanton inflictions of pain and suffering, *see Whitley v. Albers*, 475 U.S. 312, 320 (1986). To determine whether prison officials have violated the Eighth Amendment by using excessive force, courts examine "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). To prove an excessive force claim, an inmate must satisfy both an objective test and a subjective test. *Hudson*, 503 U.S. at 7-8.

#### 1.       Objective Test

The objective test requires the inmate to show that the force applied was "sufficiently serious" to establish a constitutional violation. *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (additional citations omitted)). This showing is "context specific, turning upon 'contemporary standards of decency.'" *Griffin v. Crippen*, 193 F.3d 89, 91 (2d Cir. 1999) (quoting *Blyden v. Mancusi*, 186 F.3d 252, 263 (2d Cir. 1999)). One factor to be considered is the nature and seriousness of any injury. *See Branham v. Meachum*, 77 F.3d 626, 630 (2d Cir. 1996).

"[S]ome degree of injury is ordinarily required to state a claim" of excessive use of force in violation of the Eighth Amendment. *United States v. Walsh*, 194 F.3d 37, 50 (2d Cir. 1999). A plaintiff "need not prove 'significant injury' to make out an excessive force claim," *Griffin*, 193 F.3d at 92, but "a *de minimis* use of force will rarely suffice to state a constitutional claim," *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993) (citation omitted). *De minimis* force,

6

even if clearly unpleasant to endure, does not violate the Eighth Amendment where "the use of force is not of a sort repugnant to the conscience of mankind." *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992) (internal quotation marks and citation omitted).

For example, in one recent case, the evidence showed that, when ordering an inmate to stand aside for correction officers to pass, a defendant officer had touched the inmate's face. *Tavares v. City of New York*, No. 08 Civ. 3782 (PAE) (JCF), 2011 U.S. Dist. LEXIS 137381, at *3 (S.D.N.Y. Oct. 17, 2011), *report and recommendation adopted*, 2011 U.S. Dist. LEXIS 135390 (S.D.N.Y. Nov. 23, 2011). The inmate testified that when he protested the touching of his face, the officer "responded by 'throwing [him] up against the wall, spreading [his] legs by kicking [him] harshly on both . . . ankles,' and 'compressing [his] chest against the wall [such] that plaintiff thought he was going to pas[s] out.'" *Id.* at *3 (alterations in original). The inmate claimed that "he was then 'maliciously pat frisked and verbally abused.'" *Id.* at *3-4. The defendant officer was granted summary judgment because the force used and the harm suffered by the inmate were *de minimis* and did not rise to the level of a constitutional violation. *Id.* at *15-16; *see also DeArmas v. Jaycox*, No. 92 Civ. 6139 (LMM), 1993 WL 37501 (S.D.N.Y. Feb. 8, 1993), *aff'd*, 14 F.3d 591 (2d Cir. 1993) (correction officer's punching inmate in arm and kicking inmate in leg was *de minimis* force); *Brown v. Busch*, 954 F. Supp. 588, 595 (W.D.N.Y. 1996), *report and recommendation adopted*, 954 F. Supp. 588 (W.D.N.Y. 1997) (granting summary judgment for defendant correction officers because their alleged forcing of the plaintiff into his cell by pushing, shoving, and hitting him in his lower back constituted a *de minimis* use of force which did not "reach constitutional dimensions").[2]

---

[2] For additional examples of *de minimis* force, see the cases collected in *Brown*, 954 F. Supp at 596:

> *Norman v. Taylor*, 25 F.3d 1259, 1262-64 (4th Cir. 1994), *cert. denied*, 513 U.S. 1114, 115 S.Ct. 909, 130 L.Ed.2d 791 (1995) (keys swung at inmate's face which struck his thumb was *de minimis* force); *Gavin v. Ammons*, 21 F.3d 430 (7th Cir. 1994) (table; text in Westlaw at 1994 WL 117983)

7

Here, Defendants have submitted a video recording of the incident in the draft area at Downstate, but it does not clearly show whether Plaintiff's head was slammed against the wall.[3] However, no evidence shows any injury or lasting pain resulting from Defendant Lawrence's alleged slamming of Plaintiff's head against the draft area's wall. The evidence shows that when walking to the prison medical facility, Plaintiff experienced only "slight pain" resulting from his being dragged out of the draft area. (Tr. at 83.) In the days following the incident in the draft area, Plaintiff's Downstate physician merely prescribed him Motrin, recommended bed rest, and continued Plaintiff's wearing of a medical boot. (*Id.* at 88.)

The force alleged in this case is not different in degree from the force deemed *de minimis* in numerous other cases. A correction officer's forcing an inmate's face into a prison wall,

---

(guard's pulling of inmate's hair was *de minimis* force); *Calabria v. Dubois*, 23 F.3d 394 (1st Cir.1994) (table; text in Westlaw at 1994 WL 209938) (radio belt thrown at face of inmate causing blood to appear was *de minimis* force); *White v. Holmes*, 21 F.3d 277, 280-81 (8th Cir. 1994) (keys swung at inmate which slashed his ear was *de minimis* force); *Jackson v. Pitcher*, 966 F.2d 1452 (6th Cir.) (table; text in Westlaw at 1992 WL 133041), *cert. denied*, 506 U.S. 1024, 113 S.Ct. 665, 121 L.Ed.2d 590 (1992) (guard's stomp on the hand of inmate was *de minimis* force); *Black Spotted Horse v. Else*, 767 F.2d 516, 517 (8th Cir. 1985) (corrections officer's pushing a cubicle wall so as to strike plaintiff's legs, brusque order of the inmate out of his cell and poking inmate in the back was *de minimis* force); *see also Roberts v. Samardvich*, 909 F.Supp. 594 (N.D.Ind. 1995) (grabbing inmate, pushing him up the stairs toward his cell, and placing him in cell cuffed, shackled, and secured to the door was *de minimis* force under the circumstances); *McMiller v. Wolf*, 1995 WL 529620 (W.D.N.Y. August 28, 1995) (snatching inmate's mirror, breaking it against cell bars and thereby lacerating inmate's finger was *de minimis* force); *Crow v. Leach*, 1995 WL 456357 (N.D.Cal. July 28, 1995) (corrections officer's pushing inmate into chair causing his shoulder to break window behind him was *de minimis* force); *Lyell v. Schachle*, 1995 WL 870803 (M.D.Tenn. April 3, 1995) (corrections officer's pushing inmate against cell wall causing inmate to strike head was *de minimis* force); *Jackson v. Hurley*, 1993 WL 515688 (N.D.Cal. Nov. 23, 1993) (blow to back of neck with forearm and kick to the ankle of inmate were *de minimis* force); . . . *Olson v. Coleman*, 804 F.Supp. 148, 150 (D.Kan.1992) (single blow to head of handcuffed inmate was *de minimis* force); *Candelaria v. Coughlin*, 787 F.Supp. 368, 374-75 (S.D.N.Y.1992) (fist pushed against neck of inmate causing him to lose his breath was *de minimis* force); *Neal v. Miller*, 778 F.Supp. 378, 384 (W.D.Mich. 1991) (backhand blow with fist to the groin of inmate was *de minimis* force); *Ramos v. Hicks*, 1988 WL 80176 (S.D.N.Y. July 25, 1988) ("bent wrist comealong hold" or single punch not unreasonable or excessive where inmate ignored repeated order, became agitated, and attempted to damage state property); *Anderson v. Sullivan*, 702 F.Supp. 424, 426 (S.D.N.Y.1988) (corrections officer's pulling inmate's arms behind back, lifting them up and forcing inmate's face into cell bars was *de minimis* force).

[3] Plaintiff has not challenged the authenticity of Defendants' video evidence. (Tr. at 77 ("You have the footage. I mean, it shows everything, it shows everything, you know.")) There is no evidence showing that the video was "doctored or altered" or that it does not accurately depict what occurred in the draft area. *See Scott*, 550 U.S. at 378.

8

though clearly unpleasant to endure, would not appear "repugnant to the conscience of mankind." *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992) (internal quotation marks and citation omitted). The same is true of correction officers' forcible removal of Plaintiff from the draft area. Ultimately, even viewing the evidence in the light most favorable to Plaintiff, the force that Plaintiff claims to have endured was not "objectively harmful enough to establish a constitutional violation." *Hudson*, 503 U.S. at 8 (internal quotation marks and citation omitted).

### 2. Subjective Test

The subjective test for an Eighth Amendment excessive-force claim requires the inmate to show that the prison officials "had a 'wanton' state of mind when they were engaging in the alleged misconduct." *Davidson v. Flynn*, 32 F.3d 27, 30 (2d Cir. 1994) (citing *Hudson*, 503 U.S. at 7). When determining whether the subjective test has been satisfied, courts may consider: "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials' and 'any efforts made to temper the severity of a forceful response.'" *Hudson*, 503 U.S. at 7 (quoting *Whitley*, 475 U.S. at 321).

Here, Plaintiff's testimony suggests that Defendant Lawrence's use of force was more the result of a misunderstanding than of a wanton state of mind. *See* Tr. at 65 ("Once I slipped [my medical boot] on, he slammed me against the thing and then he said I ain't tell you to move. But he didn't tell me not to put my shoe on. There was no direction. I think that was the problem, lack of communication.") There is also no evidence showing that the correction officers who forced Plaintiff out of the draft area acted with a wanton state of mind after Plaintiff admittedly "didn't respond" to their questions to him. (*Id.* at 68.)

However, viewing the evidence in the light most favorable to Plaintiff, the Court does not hold that no reasonable fact-finder could determine that Defendant Lawrence's state of mind was

9

wanton or that the force he used was unnecessary in the situation. Accordingly, the Court does not rest its decision on Defendant Lawrence's subjective state of mind at the time he allegedly used force against Plaintiff.

As discussed above, proving an Eighth Amendment excessive-force claim requires a plaintiff to satisfy *both* the objective and subjective tests described herein. Even assuming the truth of Plaintiff's testimony about the force used against him, none of the evidence creates a genuine dispute of material fact as to whether that force rose to the level of a constitutional violation. Plaintiff has failed to satisfy the objective test, and Defendants are entitled to judgment as a matter of law.

### III.     Conclusion

For the reasons discussed above, Defendants' motion for summary judgment is GRANTED.

It is hereby certified that any appeal taken *in forma pauperis* from this order would not be taken in good faith because such an appeal would be frivolous. *See* 28 U.S.C. § 1915(a)(3).

The Clerk of Court is directed to enter final judgment for Defendants and to terminate this case.

SO ORDERED.

Dated: New York, New York
       June 27, 2012

_____
J. PAUL OETKEN
United States District Judge